# EXHIBIT A



**OLD REPUBLIC INSURANCE COMPANY**

# Directors and Officers Liability Insurance Policy

**Issuing and Policyholder Servicing Office:**

**Old Republic Professional Liability, Inc.**
191 North Wacker Drive, Suite 1000
Chicago, IL 60606
Tel: (312) 750-8800
Fax: (312) 750-8965
www.oldrepublicpro.com



**OLD REPUBLIC INSURANCE GROUP**

# OLD REPUBLIC INSURANCE COMPANY
**Mt. Pleasant, Pennsylvania**

**Declarations
Directors and Officers
Liability Insurance**

**Policy Number:**      ORPRO 12 102109

**Previous Number:**   ORPRO 12 100634

---

**Important Notice**

This is a claims made policy that applies only to **Claims** first made during the **Policy Period** or the **Extended Reporting Period**, if exercised.  **Defense Costs** shall be applied against the Retention, if applicable.  **Defense Costs** paid by the Insurer shall reduce and may completely exhaust the Limit of Liability of the **Policy**.

**Please read the entire Policy carefully.**

---

Item 1.  **Parent Company and Address**:

Supernus Pharmaceuticals, Inc.
9715 Key West Ave
Rockville, MD 20850

Item 2.  **Policy Period**:      From: May 31, 2022 To: May 31, 2023
12:01 a.m. local time at the address shown in Item 1.

Item 3.  **Limit of Liability**:

(a) Aggregate Limit of Liability:      $5,000,000

(b) Sublimits of Liability:

    i.  **Derivative Investigation Costs**:  $50,000
    ii.  **Asset Protection Costs**:  $50,000 for each **Insured Person**
        $250,000 for all **Insured Persons** combined

Item 4.  **Retentions**:

$0                          **Loss** under Insuring Clause A. from each **Claim**.

$2,000,000            **Loss** under Insuring Clause B. from each **Claim** other than a **Securities Claim** or **Merger Claim**.

Insured:  Supernus Pharmaceuticals, Inc.
Policy No.: ORPRO 12 102109

$10,000,000    **Loss** under Insuring Clauses B. and C. from each **Securities Claim** other than a **Merger Claim**.

$10,000,000    **Loss** under Insuring Clauses B. and C. from each **Merger Claim**.

Item 5.  **Prior Litigation Date**:   December 31, 2005 (If "None" is shown, no Prior Litigation Date applies.)

Item 6.  **Extended Reporting Period**:

    (a)   Additional Premium:   ███████████████

    (b)   Additional Period:   12 months

Item 7.  **Notice to Insurer**:

| Notice of **Claims** or Potential **Claim**: | All Other Notices: |
|---|---|
| Old Republic Professional Liability, Inc.<br>Attention: Claims Department<br>191 North Wacker Drive, Suite 1000<br>Chicago, Illinois 60606<br>Fax: 312-750-8965<br>E-Mail: ClaimNotice@oldrepublicpro.com | Old Republic Professional Liability, Inc.<br>Attention: Underwriting Department<br>191 North Wacker Drive, Suite 1000<br>Chicago, Illinois 60606<br>Fax: 312-750-8965 |

Item 8.  **Premium**:   ████████

Item 9.  **Forms/Endorsements Effective at Inception**:
Policy Jacket, ORUG-95 (1/2016), Endorsements #1 - D95030 (01/2016); #2 - D95032 (1/2016); #3 - D95232MD (03/2016); #4 - D95411 (1/2016); #5 - D95416MD (03/2016); #6 - D95429 (1/2016); #7 - D95439 (01/2016); #8 - D95456 (01/2016); #9 - MANUSCRIPT; #10 - MANUSCRIPT; #11 - MANUSCRIPT; #12 - MANUSCRIPT; #13 - MANUSCRIPT; #14 - MANUSCRIPT; #15 - MANUSCRIPT; #16 - MANUSCRIPT.

Insured:  Supernus Pharmaceuticals, Inc.
Policy No.: ORPRO 12 102109

In witness whereof, the Insurer has caused this **Policy** to be signed by its authorized officers, but it shall not be valid unless also signed by the duly authorized representative of the Insurer.

Date: June 2, 2022

_____
Authorized Representative

# OLD REPUBLIC INSURANCE COMPANY

## DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

---

**Important Notice**

This is a claims made policy that applies only to **Claims** first made during the **Policy Period** or the **Extended Reporting Period**, if exercised.  **Defense Costs** shall be applied against the Retention, if applicable.  **Defense Costs** paid by the Insurer shall reduce and may completely exhaust the Limit of Liability of the **Policy**.

**Please read the entire Policy carefully.**

---

In consideration of the payment of the premium and in reliance on all statements made and information furnished to Old Republic Insurance Company (herein, the "Insurer") in the **Application**, which is hereby made a part hereof, and subject to the Declarations and to all other terms of this **Policy**, the Insurer, the **Company** and the **Insured Persons** agree as follows:

## I.  INSURING CLAUSES

### A.  Directors and Officers Liability

The Insurer shall pay on behalf of the **Insured Persons Loss** for which the **Insured Persons** are not indemnified by the **Company** and which the **Insured Persons** become legally obligated to pay by reason of any **Claim** first made against the **Insured Persons** during the **Policy Period** or any applicable **Extended Reporting Period** for any **Wrongful Acts**.

### B.  Company Indemnification

The Insurer shall pay on behalf of the **Company Loss** for which the **Company** grants indemnification to the **Insured Persons**, as permitted or required by law, and which the **Insured Persons** have become legally obligated to pay by reason of any **Claim** first made against the **Insured Persons** during the **Policy Period** or any applicable **Extended Reporting Period** for any **Wrongful Acts**.

### C.  Company Securities Liability

The Insurer shall pay on behalf of the **Company Loss** which the **Company** becomes legally obligated to pay by reason of any **Securities Claim** first made against the **Company** during the **Policy Period** or any applicable **Extended Reporting Period** for any **Wrongful Acts**.

## II.  COVERAGE EXTENSIONS

### A.  Derivative Investigation Costs

The Insurer shall pay on behalf of the **Company Derivative Investigation Costs** for which the **Company** becomes legally obligated to pay in response to a **Derivative Demand** first received, or a derivative lawsuit first made on behalf of the **Company** during the **Policy Period** or any applicable **Extended Reporting Period**.  The Insurer's maximum aggregate liability for all **Derivative Investigation Costs** covered pursuant to this Section II. A. shall be the **Derivative Investigation Costs** Sublimit of Liability set forth in Item 3. (b) i. of the Declarations, which amount shall be part of, and not in addition to, the aggregate Limit of Liability set forth in Item 3. (a) of the Declarations, and no Retention shall apply to such amount.

### B.  Outside Position Liability

Subject to their other terms and conditions, Insuring Clauses A. and B. include coverage for any **Insured Person** while serving in an **Outside Position**.  Any such coverage shall be specifically excess of any indemnity and any valid and collectible insurance available from or provided by the **Outside Entity** in which the **Insured Person** serves in the **Outside Position**.

**C.    Personal Protections for Insured Persons**

Subject to their other terms and conditions, Insuring Clauses A. and B. include coverage for the following **Loss** incurred by **Insured Persons** arising from any **Claim** first made, or with respect to **Liberty Protection Costs**, arising from the pre-**Claim** arrest or confinement of an **Insured Person**, during the **Policy Period** or any applicable **Extended Reporting Period**:

1.    **Asset Protection Costs**; and

2.    **Liberty Protection Costs**.

All **Asset Protection Costs** which are not otherwise covered under Insuring Clause A. or B. are subject to the applicable Sublimits of Liability set forth in Item 3. (b) of the Declarations, and no Retention shall apply to such amounts.

**D.    Extended Reporting Period**

If the **Insureds** or the Insurer refuse to renew this **Policy**, or terminate this **Policy** for a reason other than non-payment of premium, the **Insureds** shall have the right, upon payment of the additional premium described below, to an extension of the coverage granted by this **Policy** for the **Extended Reporting Period** set forth in Item 6. (b) of the Declarations immediately following the effective date of such nonrenewal or termination, but only with respect to **Claims** first made or deemed to be first made during the **Extended Reporting Period** for covered **Wrongful Acts** taking place prior to the effective date of such nonrenewal or termination.  This right of extension shall lapse unless written notice of such election, together with payment of the additional premium due, is given by the **Insureds** to the Insurer within sixty (60) days following the effective date of termination or nonrenewal.

The premium due for such **Extended Reporting Period** shall equal that percentage of the **Annual Premium** as set forth in Item 6. (a) of the Declarations.  The entire premium for such **Extended Reporting Period** shall be deemed fully earned and non-refundable upon payment, and the **Extended Reporting Period** is not cancellable by the Insurer or the **Insureds** except for non-payment of premium.

The **Insureds** shall not be entitled to elect the **Extended Reporting Period** under this Section II. D. if an **Extended Reporting Period** is elected pursuant to Section V. G. 2. of this **Policy**.

**III.   DEFINITIONS**

When used in this **Policy** either in the singular or the plural:

**A.    Annual Premium** means the original annualized premium and the fully annualized amount of any additional premiums charged by the Insurer for or during the **Policy Period** with respect to this **Policy**.

**B.    Application** means (1) the signed application for this **Policy** and any written materials attached thereto or submitted to the Insurer in connection with underwriting this **Policy**, and (2) all publicly available documents filed by the **Company** with the Securities and Exchange Commission within the last twelve (12) months prior to inception of the **Policy Period**.  Such application, attachments, materials and filings are deemed attached to and incorporated into this **Policy**.

**C.    Asset Protection Costs** means reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of the directors, officers or employees of the **Company**) incurred by an **Insured Person** to oppose efforts by an **Enforcement Authority** to seize or otherwise enjoin such **Insured Person's** personal assets or real property in connection with a **Claim** covered under this **Policy**, or to revoke, overturn or set aside a court order relating to a **Claim** covered under this **Policy** which in any way impairs the use of such assets or property, provided the Insurer consents in writing to such costs, charges, fees and expenses, which consent shall not be unreasonably withheld.

**D.** **Claim** means:

1. a written demand against any **Insured** for monetary damages or other non-monetary or injunctive relief, commenced by the **Insured's** receipt of such demand;

2. a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading upon the **Insured**;

3. an arbitration, mediation or other alternative dispute resolution proceeding against any **Insured** commenced by the **Insured's** receipt of a demand for arbitration or mediation or similar document;

4. a criminal proceeding against any **Insured** commenced by the return of an indictment or the filing of a criminal complaint, information, notice of charge or similar document against the **Insured**;

5. a formal administrative or formal regulatory adjudicatory or investigative proceeding against any **Insured Person** commenced by the filing of a notice of charge, formal investigative order or similar document;

6. a civil, criminal, administrative or regulatory investigation against an **Insured Person**, commenced by the service upon or other receipt by the **Insured Person** of a written notice, target letter or subpoena from the investigating authority identifying by name the **Insured Person** as an individual against whom a formal proceeding may be commenced, including without limitation a Wells notice from the Securities and Exchange Commission;

7. an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**;

8. the arrest or confinement by an **Enforcement Authority** of any **Insured Person** to (i) a specified residence; or (ii) a secure custodial premises operated by or on behalf of an **Enforcement Authority**, in connection with the business of the **Company**;

9. a written demand that an **Insured** toll or waive a statute of limitations, commenced by the **Insured's** receipt of such demand; or

10. an **Inquiry**, if and when the **Insured Persons** or the **Company** elect at their option to give to the Insurer written notice thereof pursuant to Section V. C. below;

including any appeal therefrom.

**E.** **Company** means, collectively, the **Parent Company** and the **Subsidiaries**, including any such organization as a debtor in possession under United States bankruptcy law or an equivalent status under the law of any other country.

**F.** **Defense Costs** means reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of the directors, officers or employees of the **Company**):

1. incurred by the **Insureds** (i) in investigating, adjusting, defending or appealing **Claims** and the premium for appeal, attachment or similar bonds but without any obligation to apply for or furnish any such bonds, or (ii) at the Insurer's request to assist the Insurer in investigating a **Claim**, or

2. incurred by the **Insured Persons** (i) in the investigation, defense or appeal of a **Claim** pursuant to, or the facilitation of the return or payment of amounts pursuant to, Section 304(a) of the Sarbanes-Oxley Act of 2002 or Sections 210 or 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, or any rules, regulations or policies pursuant to such Sections; provided the Insurer shall not be liable for any amount requested or required to be paid by an **Insured Person** pursuant to such Sections, rules, regulations or policies, (ii) as a result of the investigation, defense or appeal of a **Claim** against the **Company** for a violation of the U.K. Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any jurisdiction, or (iii) in the investigation, defense or appeal of a **Claim** against the **Insured Persons** for violation of the U.K. Bribery Act of 2010.

**G.**    **Derivative Demand** means a written demand by one or more shareholders of the **Company** upon the **Company's** Board of Directors (or equivalent management body) to bring a lawsuit against any **Insured Person** for a **Wrongful Act**.

**H.**    **Derivative Investigation Costs** means reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of the directors, officers or employees of the **Company**) incurred by a **Company** (including its Board of Directors or any committee of its Board of Directors) solely with respect to an evaluation as to whether it is in the best interest of the **Company** to prosecute the claims alleged in a **Derivative Demand** or a derivative lawsuit on behalf of the **Company**.

**I.**    **Domestic Partner** means any natural person qualifying as a domestic partner under either (1) the provisions of any applicable federal, state or local law, or (2) the provisions of any formal program established by the **Company**.

**J.**    **Enforcement Authority** means any federal, state, local or foreign law enforcement or governmental authority (including without limitation the U.S. Department of Justice, the U.S. Securities and Exchange Commission and any federal or state attorney general) or the enforcement unit of any securities exchange or similar self-regulatory body.

**K.**    **Executive Officers** means with respect to any **Company** its past, present and future chairperson, chief executive officer, chief financial officer and chief legal officer or equivalent.

**L.**    **Extended Reporting Period** means the period for the extension of coverage, if exercised, described in Section II. D. or V. G. 2. of this **Policy**.

**M.**    **Extradition** means any formal process (including without limitation an extradition proceeding pursuant to the U.K. Extradition Act of 2003 or the equivalent in any other jurisdiction) by which an **Insured Person** located in any country is surrendered or is sought to be surrendered to any other country for trial, or otherwise to answer any criminal accusation, for a **Wrongful Act**.

**N.**    **Financial Impairment** means the status of the **Company** resulting from (1) the appointment by any state or federal or foreign official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Company**, or (2) the **Company** becoming a debtor in possession.

**O.**    **Inquiry** means any request, demand or subpoena by an **Enforcement Authority**, or by or on behalf of the **Company** (including a **Company's** Board of Directors or a committee of the Board of Directors), to interview or depose an **Insured Person**, or for the production of documents by an **Insured Person**, in his or her capacity as such, whether or not such **Insured Person** allegedly committed a **Wrongful Act**, provided that such request, demand or subpoena (1) is not part of a routine or regularly scheduled audit, inspection or general oversight or compliance activity, and (2) shall not preclude coverage under this **Policy** for any related subsequent **Claim** first made during the **Policy Period** or any applicable **Extended Reporting Period** if the **Insured Persons** and the **Company** do not give notice to the Insurer of such request, demand or subpoena.  An **Inquiry** is commenced by the **Insured Person's** receipt of such request, demand or subpoena.

**P.**    **Insured Persons** means:

1.    any one or more natural persons who were, now are or shall become a duly elected or appointed director, trustee, **Manager,** officer, in-house general counsel, controller, risk manager, director of investor relations, director of human resources or their functional equivalent of the **Company**;

2.    solely with respect to a **Securities Claim**, any one or more other natural persons not described in subparagraph P. 1. above who were, now are or shall become full or part-time employees of the **Company**; provided such other employees shall not be considered **Insured Persons** for purposes of Exclusion A. 6. in Section IV. of this **Policy**; and

3.    solely with respect to Insuring Clauses A. and B., any one or more natural persons described in subparagraph P. 1. above while serving in an **Outside Position**.

**Q.**　　**Insureds** means (1) the **Insured Persons**, and (2) solely with respect to Insuring Clauses B. and C. and Section II. A., the **Company**.

**R.**　　**Interrelated Wrongful Acts** means all **Wrongful Acts** based upon, arising out of, or attributable to the same or related facts, circumstances, situations, events, transactions or causes.

**S.**　　**Liberty Protection Costs** means:

　　1.　　reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the **Company**) incurred by any **Insured Person** to lawfully seek the release of such **Insured Person** from any pre-**Claim** arrest or confinement to a specified residence or secure custodial premises operated by or on behalf of any law enforcement authority, if such arrest or confinement is for an actual or alleged **Wrongful Act** by such **Insured Person**; and

　　2.　　reasonable premiums (but not collateral) incurred by any **Insured Person** for a bond or other financial instrument to guarantee the contingent obligation of such **Insured Person** for a specified amount required by a court outside the United States in connection with such arrest or confinement during the **Policy Period** if such premiums are incurred prior to a **Claim** being made against such **Insured Person**;

provided the Insurer consents in writing to such costs, charges, fees, expenses and premiums, which consent shall not be unreasonably withheld.

**T.**　　**Loss** means the amount which the **Insureds** become legally obligated to pay on account of **Claims** made against them for which coverage applies, including, but not limited to, (1) damages (including punitive, exemplary or multiple damages if insurable as provided below), (2) judgments, (3) any award of pre-judgment and post-judgment interest with respect to covered damages, (4) settlements, (5) **Defense Costs**, (6) claimant's attorney's fees and costs for which an **Insured** against whom the **Claim** is made is legally obligated to pay by reason of a court order or settlement agreement to which the Insurer consents pursuant to Section V. D., (7) civil fines or penalties assessed against an **Insured Person** for an unintentional or non-willful violation of any federal, state, local or foreign law, including without limitation any such violation of the Foreign Corrupt Practices Act, the U.K. Bribery Act, the U.S. Federal Food, Drug and Cosmetic Act, and any such civil fines or penalties described in Section 308 of the Sarbanes-Oxley Act of 2002, and (8) solely for purposes of Sections II. A. and C., respectively, **Derivative Investigation Costs**, **Asset Protection Costs** and **Liberty Protection Costs**.

**Loss** (other than **Defense Costs**) does not include (1) any amount for which the **Insureds** are absolved from payment, (2) taxes, other than taxes imposed on a **Company** for which the **Insured Persons** are legally liable solely by reason of the **Company's** insolvency, or taxes imposed on an **Insured Person** solely by reason of the Insurer's payment of covered **Loss** incurred by such **Insured Person**, (3) fines or penalties imposed by law, other than civil fines or penalties expressly referenced above, (4) any costs incurred by the **Company** to comply with any injunctive or other non-monetary relief or any agreement to provide such relief, (5) any amount for which the **Company** is legally permitted or required and financially able to pay or indemnify and which represents or is substantially equivalent to an increase in the consideration paid or proposed to be paid by a **Company** in connection with its purchase of any securities or assets, (6) cleanup costs relating to hazardous materials, pollution or product defects, or (7) matters uninsurable under the law pursuant to which this **Policy** is construed.

The insurability of punitive, exemplary or multiple damages, fines, penalties or taxes otherwise included within this definition shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insureds**, including without limitation the jurisdiction in which the **Parent Company**, the **Insured Persons**, the Insurer, this **Policy** or such **Claim** is located.　The Insurer shall not assert that (1) **Loss** incurred by any **Insured** (other than a judgment against the **Company**) is uninsurable due to the **Insured's** actual or alleged violation of Section 11, 12 or 15 of the Securities Act of 1933, as amended, or (2) **Defense Costs** incurred by an **Insured Person** in a **Claim** under Section 304 of the Sarbanes-Oxley Act of 2002 or Sections 210 or 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act, or any rules, regulations or policies pursuant to such Sections, are uninsurable.

U. **Managers** means any natural person who was, now is or shall become a manager, member of the Board of Managers or equivalent executive of a **Company** that is a limited liability company.

V. **Merger Claim** means any **Claim** which in whole or in part alleges that one or more **Insured Persons** breached a fiduciary duty with respect to their investigation, evaluation, negotiation, approval, recommendation or disclosure of an actual or proposed transaction described in Section V. G. 2. of this **Policy**.

W. **Non-Profit Entity** means any non-profit corporation, community chest, fund or foundation that is (1) not included in the definition of **Company**, and (2) exempt from federal income tax as an organization described in Section 501(c) of the Internal Revenue Code of 1986, as amended.

X. **Outside Entity** means (1) any **Non-Profit Entity**, or (2) any other entity specifically included as an **Outside Entity** by endorsement to this **Policy**.

Y. **Outside Position** means the position of director, officer, manager, trustee or other equivalent executive position held by any **Insured Person** described in Section III. P. 1. above in an **Outside Entity** if service in such position is at the direction or request of, or part of the duties regularly assigned to the **Insured Person** by, the **Company**.

Z. **Parent Company** means the organization first named in Item 1. of the Declarations.

AA. **Policy** means, collectively, the Declarations, the **Application**, this policy form and any endorsements hereto.

BB. **Policy Period** means the period of time specified in Item 2. of the Declarations, subject to prior termination in accordance with Section V. I. of this **Policy**.

CC. **Securities Claim** means any **Claim**, other than an administrative, regulatory or investigative proceeding against or investigation of the **Company** or any employment-related **Claim**, which in whole or in part is:

   1. brought by one or more securities holders of the **Company** in their capacity as such, either directly or derivatively on behalf of the **Company**, or

   2. based upon, arising out of or attributable to the purchase or sale of, or offer to purchase or sell, any securities issued by the **Company**, whether such purchase, sale or offer involves a transaction with the **Company** or occurs in the open market (including without limitation any such **Claim** brought by the Securities and Exchange Commission or any other claimant).

   Notwithstanding the foregoing, **Securities Claim** for purposes of Insuring Clause C. shall include an administrative, regulatory or investigative proceeding against the **Company** during the time such proceeding is also being maintained against an **Insured Person**.

   Solely with respect to coverage under Insuring Clause C., a **Securities Claim** includes a derivative lawsuit by a securities holder of the **Company** to the extent such lawsuit names the **Company** as a nominal defendant, whether or not the **Company** allegedly committed a **Wrongful Act**; provided coverage afforded by reason of this sentence shall not apply to **Derivative Investigation Costs**.

DD. **Subsidiary** means:

   1. any organization in which more than fifty percent (50%) of the outstanding voting securities representing the present right to vote for election of or to appoint or designate directors, **Managers** or equivalent executives is owned, directly or indirectly, in any combination, by one or more **Companies**;

   2. any organization in which one or more **Companies**, in any combination, have the right, pursuant to a written contract with or the by-laws, charter, operating agreement or similar document of such organization, to elect or appoint a majority of the directors, **Managers** or equivalent executives of such organization; and

   3. any foundation or charitable trust controlled or exclusively sponsored by one or more **Companies**;

on or before the inception of the **Policy Period**.

EE.  **Wrongful Act** means:

1.  any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by any of the **Insured Persons** in their capacity as such, or in an **Outside Position** or, with respect to Insuring Clause C., by the **Company**, or

2.  any matter claimed against the **Insured Persons** by reason of their status as such or their serving in such capacity or in an **Outside Position**.

## IV. EXCLUSIONS

A.  The Insurer shall not be liable for **Loss** on account of that portion of any **Claim** made against any **Insured**:

1.  based upon, arising out of, or attributable to any fact, circumstance, situation, **Wrongful Act** or claim which has been the subject of any written notice under any other directors' and officers' liability insurance policy if such notice is given under such other policy prior to the inception of the **Policy Period** and if the insurer of such other policy does not reject such notice as invalid;

2.  based upon, arising out of, or attributable to any **Claim** or other litigation, arbitration or administrative or regulatory proceeding or investigation involving any **Insured**, pending on or before the applicable Prior Litigation Date set forth in Item 5. of the Declarations, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

3.  for bodily injury (other than mental anguish or emotional distress), sickness, disease or death of any person, or for damage to or destruction of any tangible property including loss of use thereof, but this exclusion shall not apply to (i) Insuring Clause A., (ii) a **Securities Claim**, or (iii) **Defense Costs** resulting from a **Claim** against the **Company** for a violation of the U.K. Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any jurisdiction;

4.  for **Wrongful Acts** actually or allegedly committed or attempted by a **Subsidiary** or its **Insured Persons** before the date such **Subsidiary** became an **Insured**;

5.  based upon, arising out of, or attributable to:

    a.  any deliberately fraudulent act or omission or any willful violation of law by such **Insured**; or

    b.  such **Insured** gaining any financial profit or financial advantage or receiving financial remuneration to which such **Insured** was not legally entitled;

    if a final and non-appealable adjudication in an underlying proceeding establishes such **Insured** committed such fraudulent conduct or willful violation of law or received such profit, advantage or remuneration, but this exclusion shall not apply, with respect to subparagraph 5. b. above, to any actual or alleged violation of Section 11, 12 or 15 of the Securities Act of 1933, as amended;

6.  brought or maintained by or on behalf of the **Company** or, with respect to coverage under Section II. B., an **Outside Entity**, against:

    a.  any other **Company**; or

    b.  any **Insured Person**, provided this paragraph 6. b. shall not apply to:

        i.  any **Claim** that is a derivative action brought or maintained on behalf of the **Company** or such **Outside Entity** by one or more persons who are not **Insured Persons** and who bring and maintain the **Claim** without the active assistance or participation of, or solicitation by, the **Company**, such **Outside Entity** or any **Insured Person**, other than assistance, participation or solicitation by **Insured Persons** that is protected pursuant to Section 806 of the Sarbanes-

Oxley Act of 2002, as amended, or any similar whistleblower protection provision in any applicable federal, state, local or foreign law which protects such **Insured Persons**;

ii. any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver or creditors committee for the **Company** or such **Outside Entity**, or any assignee of such trustee, examiner, receiver or creditors committee;

iii. any **Claim** brought or maintained by the **Company** or such **Outside Entity** as a debtor in possession against an **Insured Person** who no longer serves in an insured capacity at the time the **Claim** commences, but only if such **Claim** is brought and maintained (a) without the active assistance or participation of any of the **Parent Company's** chief executive officers, chief financial officers, presidents, chairs or other equivalent executives who served in such capacity prior to the **Company's** bankruptcy ("Prior Executives"), and (b) after all such Prior Executives no longer serve in an insured capacity;

iv. any **Claim** brought and maintained outside the United States, Canada or any other common law country, including any territories thereof;

v. any **Claim** while such **Insured Person** is no longer serving in such capacity; or

vi. **Defense Costs** covered under Insuring Clause A.; or

7. for an actual or alleged violation of the responsibilities, obligations or duties imposed on fiduciaries by the Employee Retirement Income Securities Act of 1974, as amended, or any similar federal, state or local common or statutory law anywhere in the world or any rules and regulations promulgated thereunder.

## B. Severability of Exclusions

For the purpose of determining the applicability of any Exclusion set forth in this **Policy**:

1. the **Wrongful Act** of any **Insured Person** shall not be imputed to any other **Insured Persons**; and

2. only the **Wrongful Act** of any **Executive Officer** of a **Company** shall be imputed to such **Company** and its **Subsidiaries** for purposes of Insuring Clause C.

## V. GENERAL TERMS AND CONDITIONS

### A. Estates, Legal Representatives, Spouses and Domestic Partners

The estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of **Insured Persons** shall be considered an **Insured** under this **Policy**; but coverage is afforded to such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** only for a **Claim** arising solely out of their status as such and, in the case of a spouse or **Domestic Partner**, where such **Claim** seeks damages from marital community property, jointly held property or property transferred from the **Insured Person** to the spouse or **Domestic Partner**. No coverage is provided for any **Wrongful Act** of an estate, heir, legal representative, assign, spouse or **Domestic Partner**. All terms and conditions of this **Policy**, including without limitation the Retention, applicable to **Loss** incurred by the **Insured Person** shall also apply to loss incurred by such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners**.

### B. Limit of Liability and Retention

For the purposes of this **Policy**, all **Claims** which in whole or in part arise out of the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**. All **Loss** resulting from a single **Claim** shall be deemed a single **Loss**.

Subject to the Sublimits of Liability stated in Item 3. (b) of the Declarations, the amount stated in Item 3. (a) of the Declarations shall be the maximum aggregate liability of the Insurer under this **Policy** for all covered

**Loss** resulting from all covered **Claims**, regardless of the number of **Claims** or the time of payment by the Insurer.

The Limit of Liability for the **Extended Reporting Period**, if exercised, shall be part of and not in addition to the Limit of Liability for the **Policy Period**.  The purchase of the **Extended Reporting Period** shall not increase or reinstate the aggregate Limit of Liability or the Sublimits of Liability, which shall be the respective maximum liability of the Insurer for the **Policy Period** and **Extended Reporting Period**, combined.

**Defense Costs** shall be part of and not in addition to the aggregate Limit of Liability set forth in Item 3. of the Declarations, and **Defense Costs** shall reduce and may exhaust such Limit of Liability or Sublimits of Liability.  If the Limit of Liability or Sublimit of Liability applicable to a **Loss** is exhausted by payment of **Loss**, the Insurer's obligations under this **Policy** with respect to such **Loss** shall be completely fulfilled and extinguished.  The Insurer is entitled to pay **Loss** as it becomes due and payable by the **Insureds**, without consideration of other future payment obligations.

Except as otherwise provided in this Section V. B., the Insurer's liability with respect to **Loss** arising from each **Claim** shall apply only to that part of **Loss** which is excess of the applicable Retention amount set forth in Item 4. of the Declarations.  If different parts of a single **Claim** are subject to different Retentions, the applicable Retentions will be applied separately to each part of such **Loss**, but the sum of such Retentions shall not exceed the largest applicable Retention.  The applicable Retention shall be eroded by either the **Insureds** or an insurer of an Excess Difference in Conditions Side A policy paying covered **Loss** otherwise subject to such Retention.

If the **Company** is permitted or required by common or statutory law, but fails or refuses, other than for reason of **Financial Impairment**, to advance **Defense Costs** or indemnify the **Insured Persons** for **Loss**, then any payment by the Insurer of such **Defense Costs** or other **Loss** shall not be reduced by the applicable Insuring Clause B. Retention.  However, if the Insurer pays such **Defense Costs** or such other **Loss**, the **Company** shall reimburse the Insurer for such amounts up to the applicable Insuring Clause B. Retention, and such amounts shall become immediately due and payable as a direct obligation of the **Company** to the Insurer.  The **Company** agrees to indemnify and advance on behalf of the **Insured Persons** all such **Defense Costs** and other **Loss** otherwise covered under this **Policy** to the fullest extent permitted or required by applicable law.  For purposes of this paragraph, the shareholder, **Managers**, and Board of Director resolutions of the **Company** shall be deemed to provide indemnification for such **Defense Costs** or other **Loss** to the fullest extent permitted by law.

**C.    Notice**

The **Insureds** shall give to the Insurer written notice of any **Claim** made against the **Insureds** as soon as practicable after any **Executive Officer** or the **Company's** risk manager first learns of such **Claim**, but in no event later than (1) ninety (90) days after expiration of the **Policy Period**, if the **Extended Reporting Period** is not exercised, or (2) expiration of the **Extended Reporting Period**, if exercised.  If a **Company** or an **Insured Person**, in their sole and absolute discretion, elects to seek coverage for an **Inquiry**, the **Company** or **Insured Person** shall give written notice to the Insurer of such **Inquiry**.  Any coverage under this **Policy** with respect to such **Inquiry** shall only apply to **Defense Costs** incurred after the date notice of the **Inquiry** is given to the Insurer.

If during the **Policy Period** or the **Extended Reporting Period**, if exercised, the **Insureds** first become aware of any circumstances which may reasonably give rise to a future **Claim** under this **Policy** and during such **Policy Period** or **Extended Reporting Period**, if exercised, give written notice to the Insurer of the circumstances, the anticipated **Wrongful Act** allegations, the reasons for anticipating such **Claim** and full particulars as to dates, persons and entities involved, then any **Claim** which arises out of such circumstances shall be deemed to have been first made during the **Policy Period** or the **Extended Reporting Period**, if exercised, in which such written notice was received by the Insurer.  No coverage is provided for fees and expenses incurred prior to the time such notice results in a **Claim**.

All notices under any provision of this **Policy** shall be in writing and given by email, mail, prepaid express courier, or facsimile properly addressed to the appropriate party.  Notice to the **Insureds** may be given to the **Parent Company** at the address as shown in Item 1. of the Declarations.  Notice to the Insurer shall be given to the respective address set forth in Item 7. of the Declarations.  Notice given as described above

shall be deemed to be received and effective upon actual receipt thereof by the addressee or one day following the date such notice is sent, whichever is earlier.

**D.    Defense and Settlement**

Subject to this Section V. D., it shall be the duty of the **Insureds** and not the duty of the Insurer to defend any **Claim**.

The **Insureds** agree not to settle or offer to settle any **Claim**, select defense counsel, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Insurer's written consent.  Only those settlements, **Defense Costs**, assumed obligations or admissions to which the Insurer consents shall be recoverable **Loss** under this **Policy**.  The **Insureds** shall promptly send to the Insurer all settlement demands or offers received by the **Insureds** from the claimant(s). However, if the **Insureds** are able to settle all **Claims** which are subject to a single Retention for an aggregate amount, including **Defense Costs**, not exceeding such Retention, the Insurer's consent shall not be required for the settlement of such **Claims**.

With respect to any **Claim** submitted for coverage under this **Policy**, the Insurer shall have the right and shall be given the opportunity to effectively associate with the **Insureds** regarding the defense and settlement of such **Claim**, including without limitation negotiating a settlement.

The **Insureds** agree to provide the Insurer with all information, assistance and cooperation which the Insurer reasonably requests and agree that in the event of a **Claim** or **Loss** the **Insureds** will do nothing that shall prejudice the Insurer's position or its potential or actual rights of recovery.  The Insurer may make any investigation it deems necessary.

The failure of any **Insured Person** or the **Company** to comply with this Section V. D. shall not impair the rights of any other **Insured Person** under this **Policy**.

Subject to Section V. E. of this **Policy**, the Insurer shall advance on behalf of the **Insureds** covered **Defense Costs** which the **Insureds** have incurred in connection with **Claims** made against them, within sixty (60) days after receipt of itemized **Defense Costs** invoices.  The **Insureds** agree that any **Defense Costs** advanced by the Insurer shall be repaid to the Insurer by the **Insureds** severally according to their respective interests if and to the extent it is finally determined that such **Defense Costs** are not covered under this **Policy**.

The Insurer and the **Insureds** shall not unreasonably withhold any consent referenced in this Section V. D. The Insurer may withhold consent to multiple defense counsel in a single **Claim** unless multiple defense counsel is required due to an actual conflict of interest or is otherwise reasonably justifiable.

**E.    Allocation**

If in any **Claim** the **Insureds** who are afforded coverage for such **Claim** incur **Loss** jointly with others (including **Insureds**) who are not afforded coverage for such **Claim**, or incur an amount consisting of both **Loss** covered by this **Policy** and loss not covered by this **Policy** because such **Claim** includes both covered and uncovered matters, then the **Insureds** and the Insurer shall allocate such amount between covered **Loss** and uncovered loss based upon the relative legal and financial exposures of the parties to covered and uncovered matters and, in the event of a settlement, based also upon the relative benefits to the parties from settlement of the covered and uncovered matters.

If there is an agreement on an allocation of **Defense Costs**, the Insurer shall advance within sixty (60) days after receipt of itemized **Defense Costs** invoices those **Defense Costs** allocated to covered **Loss**.  If there is no such agreement on an allocation of **Defense Costs**, the Insurer shall advance within sixty (60) days after receipt of itemized **Defense Costs** invoices those **Defense Costs** which the Insurer believes to be covered under this **Policy** until a different allocation is negotiated, arbitrated or judicially determined.  The **Insureds** agree that any **Defense Costs** advanced by the Insurer shall be repaid to the Insurer by the **Insureds** severally according to their respective interests if and to the extent it is finally determined that such **Defense Costs** are not covered under this **Policy**.

Any negotiated, arbitrated or judicially determined allocation of **Defense Costs** on account of a **Claim** shall be applied retroactively to all **Defense Costs** on account of such **Claim**, notwithstanding any prior advancement to the contrary.  Any allocation or advancement of **Defense Costs** on account of a **Claim** shall not apply to or create any presumption with respect to the allocation of other **Loss** on account of such **Claim** or any other **Claim**.

**F.    Other Insurance**

If any **Loss** under this **Policy** is insured under any other valid and collectible policy(ies), prior or current, then this **Policy** shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is (1) written only as specific excess insurance over the Limit of Liability provided in this **Policy**, or (2) a personal liability or umbrella insurance policy purchased by an **Insured Person**.

**G.    Transactions Changing Coverage**

1.  Acquisition or Creation of Another Organization

    If, during the **Policy Period**, the **Company**:

    a.  acquires voting securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

    b.  acquires any organization by merger into or consolidation with the **Company**;

    then, subject to all terms and conditions of this **Policy**, such organization and its **Insureds** shall be covered under this **Policy** but only with respect to covered **Wrongful Acts** taking place after such acquisition or creation unless the Insurer agrees to provide coverage by endorsement for **Wrongful Acts** taking place prior to such acquisition or creation.

    If the assets of such acquired organization exceed twenty-five percent (25%) of the total assets of the **Parent Company** as reflected in the **Parent Company's** then most recent consolidated financial statements, the **Parent Company**, as a condition precedent to coverage with respect to such **Insureds**, shall give written notice of such acquisition to the Insurer within ninety (90) days after the effective date of such acquisition and shall agree to any additional terms and conditions, and pay any reasonable additional premium, required by the Insurer.

2.  Acquisition of **Parent Company**

    If, during the **Policy Period**, any of the following events occur:

    a.  the acquisition of the **Parent Company**, or of all or substantially all of its assets, by any person, entity or group of persons or entities acting in concert, or the merger or consolidation of the **Parent Company** into or with another entity such that the **Parent Company** is not the surviving entity; or

    b.  the obtaining by any person, entity or group of persons or entities acting in concert of securities or rights which results in such person, entity or group having the right to elect, appoint or designate at least fifty percent (50%) of the directors or **Managers** of the **Parent Company**;

    then coverage under this **Policy** will continue in full force and effect until termination of this **Policy**, but only with respect to **Claims** for covered **Wrongful Acts** taking place before such event.  Coverage under this **Policy** will cease as of the effective date of such event with respect to **Claims** for **Wrongful Acts** taking place after such event.

    If such event occurs, the **Insureds** shall have the right, upon payment of the additional premium described below, to elect an extension of the coverage described in the preceding paragraph for a twelve (12) to seventy-two (72) month **Extended Reporting Period** following the termination of the **Policy Period**; but the Insurer may, in its sole discretion and subject to any additional terms, conditions and premiums required by the Insurer, agree by written endorsement to this **Policy** to any other

**Extended Reporting Period** requested by the **Insureds**.  This right to elect an extension of coverage shall lapse unless written notice of such election, together with payment of the additional premium due, is given by the **Insureds** to the Insurer within thirty (30) days following the effective date of such event.

Upon request from any **Insured** following notice to the Insurer of such event, the Insurer shall notify such **Insured** of the additional premium amount for this extension of coverage.

The **Insureds** shall not be entitled to elect this extension of coverage if an **Extended Reporting Period** is elected pursuant to Section II. D. of this **Policy**.

3. Cessation of Subsidiaries

If before or during the **Policy Period** an organization ceases to be a **Subsidiary**, coverage with respect to such **Subsidiary** and its **Insureds** shall apply only with respect to **Claims** for covered **Wrongful Acts** taking place prior to the date such organization ceased to be a **Subsidiary**.

**H. Representations and Severability**

The **Insureds** acknowledge and agree that the statements and information contained in the **Application** are true and are the basis of this **Policy** and are to be considered as incorporated into and constituting a part of this **Policy**.  This **Policy** is issued in reliance upon the truth of such representations and warranties.

In the event the **Application** contains any misrepresentation or omission of material information, then coverage under this **Policy** may be voided *ab initio* only as described below:

1. coverage for any non-indemnifiable **Loss** under Insuring Clause A. shall not be rescinded or voided by the Insurer in whole or in part for any reason;

2. coverage may be voided *ab initio* for indemnifiable **Loss** incurred by an **Insured Person** only if and to the extent such **Loss** is incurred by an **Insured Person** who had knowledge of the facts that were either omitted from or misrepresented in the **Application**, whether or not such **Insured Person** knew the **Application** contained such misrepresentation or omission; and

3. coverage for a **Company** and its **Subsidiaries** may be voided *ab initio* for **Loss** otherwise covered under Insuring Clause C. only if any past or present **Executive Officer** of such **Company** had knowledge of the facts that were either omitted from or misrepresented in the **Application**, whether or not such **Executive Officer** knew the **Application** contained such misrepresentation or omission.

For purposes of this Section V. H., knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**, and only knowledge possessed by an **Executive Officer** of a **Company** shall be imputed to such **Company** and its **Subsidiaries** for purposes of Insuring Clause C.

**I. Termination and Nonrenewal of Policy**

This **Policy** shall terminate at the earliest of the following times:

1. the effective date of termination specified in a prior written notice by the **Parent Company** to the Insurer, provided this **Policy** may not be terminated by the **Parent Company** after the effective date of an event described in Section V. G. 2. of this **Policy**;

2. upon expiration of the **Policy Period** as set forth in Item 2. of the Declarations;

3. twenty (20) days after receipt by the **Parent Company** of a written notice of termination from the Insurer for failure to pay a premium when due, unless the premium is paid within such twenty (20) days; or

4. at such other time as may be agreed upon by the Insurer and the **Parent Company**.

The Insurer may only cancel this **Policy** for non-payment of premium as set forth in subparagraph 3. above and may not cancel for any other reason.

The Insurer shall refund the unearned premium, which shall be ninety percent (90%) of the pro rata unearned premium if this **Policy** is terminated by the **Parent Company**.  Under any other circumstances the refund shall be computed pro rata.  Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

If the Insurer decides to nonrenew this **Policy**, the Insurer will mail to the **Parent Company** written notice stating such intent at least sixty (60) days before the expiration date set forth in Item 2. of the Declarations.

If a financial strength rating for the Insurer is issued (1) below A- by A.M. Best Co., or (2) below BBB by Standard & Poor's Rating Services (hereinafter "Credit Rating Downgrade"), this **Policy** may be canceled by the **Parent Company** by mailing written prior notice to the Insurer of such cancellation or by surrender of this **Policy** to the Insurer.  If this **Policy** is cancelled by the **Parent Company** within thirty (30) days after such Credit Rating Downgrade, the Insurer shall compute and refund to the **Parent Company** the unearned premium on a pro rata basis.  If this **Policy** is cancelled by the **Parent Company** after such thirty (30) days, the Insurer shall compute and refund to the **Parent Company** the unearned premium at a rate of ninety percent (90%) of the pro rata unearned premium.

**J.    Payment Priority**

If the amount of any covered **Loss** which is otherwise due and owing by the Insurer under this **Policy** exceeds the then-remaining Limit of Liability applicable to such **Loss**, the Insurer shall pay such **Loss** (subject to such Limit of Liability) in the following priority:

1.   First, the Insurer shall pay any such **Loss** covered under Insuring Clause A.;

2.   Second, only if and to the extent the payment under subparagraph 1. above does not exhaust the applicable Limit of Liability, the Insurer shall pay any such **Loss** covered under any other Insuring Clause.

Subject to the foregoing paragraph, the Insurer shall, upon receipt of a written request from the **Parent Company**, delay any payment of covered **Loss** otherwise due and owing under Insuring Clause B. and/or Insuring Clause C. until such time as the **Parent Company** designates, provided the Insurer's liability with respect to any such delayed **Loss** payment shall not be increased, and shall not include any interest, on account of such delay.

**K.    Bankruptcy**

Bankruptcy or insolvency of **Insureds** or of the estate of any **Insured Person** shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights or defenses under this **Policy**.

If a liquidation or reorganization proceeding is commenced by or against a **Company** pursuant to the United States Bankruptcy Code, as amended, or any similar state or local law, the **Insureds** hereby (1) waive and release any automatic stay or injunction which may apply in such proceeding to this **Policy** or its proceeds under such Bankruptcy Code or law, and (2) agree not to oppose or object to any efforts by the Insurer or any **Insured** to obtain relief from any such stay or injunction.

**L.    Territory and Valuation**

All premiums, limits, Retentions, **Loss** and other amounts under this **Policy** are expressed and payable in the currency of the United States of America.  If judgment is rendered, settlement is denominated or another element of **Loss** under this **Policy** is stated in a currency other than United States of America dollars, payment under this **Policy** shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **Loss** is due, respectively.

Coverage under this **Policy** shall extend to **Wrongful Acts** taking place, **Loss** incurred or **Claims** made anywhere in the world.

**M.    Subrogation**

In the event of any payment under this **Policy**, the Insurer shall be subrogated to the extent of such payment to all the **Insureds**' rights of recovery, including without limitation the **Insured Person's** rights to indemnification or advancement from the **Company**.  The **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Insurer effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insureds**.  In no event shall the Insurer subrogate against an **Insured Person** unless and to the extent Exclusion A. 5. in Section IV. of this **Policy** applies to such **Insured Person**.

Any recoveries by the Insurer of **Loss** paid under this **Policy** shall be the sole property of the Insurer, but an amount equal to the amount of such recoveries, minus all costs incurred by the Insurer to obtain such recoveries, shall reinstate, in such amount and as of the date each recovery is received by the Insurer, the Limits of Liability and any Sublimit of Liability of this **Policy** that were eroded or exhausted by such payment.

**N.    Action Against the Insurer**

No action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this **Policy**.  No person or organization shall have any right under this **Policy** to join the Insurer as a party to any action against **Insureds** to determine the **Insured's** liability nor shall the Insurer be impleaded by the **Insureds** or their legal representatives.

**O.    Authorization Clause**

By acceptance of this **Policy**, the **Parent Company** agrees to act on behalf of the **Insureds** with respect to the payment of premiums and the receiving of any return premiums that may become due under this **Policy**, the agreement to and acceptance of endorsements, and the giving or receiving of any notice provided for in this **Policy**, and the **Insureds** agree that the **Parent Company** shall so act on their behalf.

**P.    Alteration, Assignment and Headings**

No change in, modification of, or assignment of interest under this **Policy** shall be effective except when made by a written endorsement to this **Policy** which is issued by the Insurer.

The titles and headings to the various sections, subsections and endorsements of the **Policy** are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such sections, subsections or endorsements.

# OLD REPUBLIC INSURANCE COMPANY

**TERRORISM ENDORSEMENT**

This endorsement modifies coverage provided under the following:

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

It is understood and agreed:

1.  The Insurer acknowledges that **Loss** otherwise covered under this **Policy** which is on account of any **Claim** based upon, arising out of, or attributable to an Act of Terrorism is not per se excluded from coverage under this **Policy**; provided, however, the Insurer shall not be liable for such **Loss** to the extent such **Loss** constitutes an amount for which the Insurer is not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002, (including subsequent acts of Congress pursuant to such Act), as amended, and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2015.

2.  For the purpose of this endorsement, an Act of Terrorism means an act (including but not limited to the use or threat of force, violence, dangerous acts and/or the interference or disruption of electronic, communications, information or mechanical systems) by any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes, including the intention to influence, intimidate, coerce or disrupt any government, the economy and/or the public or any segment of the public. Without limiting the foregoing, an Act of Terrorism shall include an act that is certified by the Secretary of the Treasury to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002, as amended, and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2015. ("Certified Act of Terrorism").

**Federal Terrorism Risk Insurance Program Reauthorization Act of 2015**

You are hereby notified that under the Terrorism Risk Insurance Act, as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2015. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, covered terrorism losses exceeding the statutorily established deductible paid by the insurer are subject to pro-rata allocation in accordance with procedures established by the Secretary of the Treasury. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 1 | ORPRO 12 102109 | Supernus Pharmaceuticals, Inc. | |

# OLD REPUBLIC INSURANCE COMPANY

insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is: $0 and does not include any charges for the portion of losses covered by the United States government under the Act.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 1 | ORPRO 12 102109 | Supernus Pharmaceuticals, Inc. | |

D95030 (01/2016)

# OLD REPUBLIC INSURANCE COMPANY

**AMENDED DEFINITION OF INSURED PERSONS**

This endorsement modifies coverage provided under the following:

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

It is understood and agreed that subpart 1. of the definition of "**Insured Persons"** in Section III. P. is amended to also include all natural persons who served, now serve, or shall serve in any of the following positions with the **Company**:

- Shadow and De Facto Directors

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 2 | ORPRO 12 102109 | Supernus Pharmaceuticals, Inc. | |

D95032 (1/2016) Page 1 of 1

# OLD REPUBLIC INSURANCE COMPANY

### AMEND TERMINATION AND NONRENEWAL
### MARYLAND ONLY

This endorsement modifies insurance provided under the following:

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

It is understood and agreed that Section V. I., Termination and Nonrenewal of Policy, is amended by the addition of the following:

Any written notice sent by the Insurer under this Section V. I. shall use the first-class mail tracking method.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 3 | ORPRO 12 102109 | Supernus Pharmaceuticals, Inc. | |

D95232MD (03/2016)                                                                                         Page 1 of 1

# OLD REPUBLIC INSURANCE COMPANY

**EMPLOYMENT PRACTICES COVERAGE ENDORSEMENT**

This endorsement modifies coverage provided under the following:

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

It is understood and agreed that:

1.    The coverage afforded under Insuring Clause B. of this **Policy** includes **Claims** first made during the **Policy Period** or any applicable **Extended Reporting Period** against the **Insured Persons** for **Employment Practices**, as defined below, subject to the terms, conditions and exclusions of this **Policy**, including this endorsement.

2.    Solely for the purpose of the coverage under Insuring Clause B. for **Employment Practices**, Section III., Definitions, is amended by the addition of the following:

"**Employment Practices**" means any **Wrongful Act** involving any actual or alleged:

a.    wrongful dismissal or discharge or termination of employment, whether actual or constructive;
b.    employment-related misrepresentation;
c.    violation of any federal, state or local laws (whether common-law or statutory) concerning employment or discrimination in employment;
d.    sexual harassment or other harassment in the workplace;
e.    wrongful deprivation of career opportunity or failure to employ or promote;
f.    wrongful discipline of employees;
g.    negligent evaluation of employees; or
h.    failure to adopt adequate workplace or employment policies and procedures.

3.    Solely for the purpose of the coverage under Insuring Clause B. for **Employment Practices**, the definition of "**Insured Persons**" in Section III. P. is amended to also include the following:

All former, current or future employees of the **Company**.

4.    Notwithstanding anything in the definition of **Loss** to the contrary, solely for the purpose of coverage under Insuring Clause B. for **Employment Practices**, **Loss** shall not include any punitive, exemplary, multiple or liquidated damages.

5.    Solely for the purpose of the coverage under Insuring Clause B. for **Employment Practices**, the Retention in Item 4. of the Declarations applicable to **Loss** from each **Claim** other than a **Securities Claim** under Insuring Clauses B. and C. is amended to read in its entirety as follows:

$500,000  **Loss** from each **Claim** for **Employment Practices** under Insuring Clause B.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 4 | ORPRO 12 102109 | Supernus Pharmaceuticals, Inc. | |

D95411 (1/2016)                                                                                                    Page 1 of 2

# OLD REPUBLIC INSURANCE COMPANY

6.      Coverage under Insuring Clause B. for **Employment Practices** is specifically excess of and shall not contribute with any other employment practices insurance maintained by or for the benefit of the **Company** or any **Insured Persons**.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 4 | ORPRO 12 102109 | Supernus Pharmaceuticals, Inc. | |

D95411 (1/2016)                                                                                                        Page 2 of 2

# OLD REPUBLIC INSURANCE COMPANY

### FULL NON-RESCISSION ENDORSEMENT
### MARYLAND ONLY

This endorsement modifies coverage provided under the following:

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

It is understood and agreed that, notwithstanding anything to the contrary in this **Policy** (including any other Endorsement to this **Policy** or the **Application**):

1.  Coverage under this **Policy,** including coverage under Insuring Clauses A., B., or C. or under Section II. (Coverage Extensions), shall not be rescinded by the Insurer in whole or in part for any reason.

2.  The second paragraph of Section V. H. is amended to read in its entirety as follows:

    In the event the **Application** contains any misrepresentation or omission of any fact or circumstance (i) made with the intent to deceive, or (ii) which materially affects the acceptance of the risk, the hazard assumed or the premium charged by the Insurer under this **Policy,** then any **Claim** based upon, arising out of, or attributable to such misrepresented or omitted fact or circumstance shall not be covered under this **Policy** as provided below:

    a.  The Insurer shall not be liable pursuant to Insuring Clause A. or B. or Section II. B. or C. for **Loss** on account of such **Claim** which is incurred by any **Insured Person** who knew of such fact or circumstance as of inception of this **Policy;** and

    b.  The Insurer shall not be liable pursuant to Insuring Clause C. or Section II. A. for **Loss** on account of such **Claim** if any past or present **Executive Officer** of the **Company** knew of such fact or circumstance as of inception of this **Policy.**

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 5 | ORPRO 12 102109 | Supernus Pharmaceuticals, Inc. | |

# OLD REPUBLIC INSURANCE COMPANY

**EMPLOYED LAWYER ENDORSEMENT**
**(Sublimit)**

This endorsement modifies coverage provided under the following:

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

It is understood and agreed that:

1.     The definition of **"Insured Persons"** is amended to also include Employed Lawyers (as defined below) but only if and to the extent:

    a.     a **Claim** otherwise covered under this **Policy** is made against both an Employed Lawyer and an **Insured Person** identified in Section III. P. 1. of this **Policy**; and

    b.     the **Claim** against the Employed Lawyer is for a **Wrongful Act** by the Employed Lawyer in the rendering or failure to render professional legal services for or on behalf of the **Company** at the specific request or direction of, or as part of the duties regularly assigned to the Employed Lawyer by, the **Company**, provided such services are related to such Employed Lawyer's employment with the **Company** and are rendered in his or her capacity as an employee of the **Company**.

2.     The Insurer's maximum liability with respect to the coverage provided by this endorsement shall be $1,000,000.  This is a sublimit which further limits and does not increase the Insurer's maximum liability under this **Policy** as set forth in Item 3. of the Declarations.

3.     For purposes of this endorsement:

    a.     "Employed Lawyer" means any employee of the **Company**, in their capacity as such, who is admitted in good standing to practice law in the applicable jurisdiction.

    b.     The shareholder and board of director resolutions of the **Company** shall be deemed to provide indemnification for **Defense Costs** and other **Loss** incurred by an Employed Lawyer to the fullest extent permitted by law.

    c.     Employed Lawyers covered under this **Policy** by reason of this endorsement shall not be considered **Insured Persons** for purposes of Exclusion A. 6. in Section IV. of this **Policy**.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 6 | ORPRO 12 102109 | Supernus Pharmaceuticals, Inc. | |

D95429 (1/2016)                                                                                     Page 1 of 1

# OLD REPUBLIC INSURANCE COMPANY

### CONTROLLING SHAREHOLDER COVERAGE ENDORSEMENT
### (Executive Officers Only)

This endorsement modifies coverage provided under the following:

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

It is understood and agreed:

1. The definition of **Wrongful Act** in Section III. EE. is amended to add the following additional subparagraph:

    3. solely with respect to a **Securities Claim** against an **Executive Officer**, any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by such **Executive Officer** in his or her capacity as a **Controlling Shareholder**, but only if and while such **Securities Claim** is also made and continuously maintained against such **Executive Officer** in his or her capacity as a director or officer of the **Company**.

2. For purposes of this Endorsement, **Controlling Shareholder** means any **Executive Officer** of a **Company** who owns directly an equity ownership interest in such **Company** and by reason of such equity ownership controls such **Company** within the meaning of Section 15 of the Securities Act of 1933 or Section 20(a) of the Securities Exchange Act of 1934.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 7 | ORPRO 12 102109 | Supernus Pharmaceuticals, Inc. | |

D95439 (01/2016)                                                                                        Page 1 of 1

# OLD REPUBLIC INSURANCE COMPANY

### CLASS CERTIFICATION EVENT STUDY COSTS ENDORSEMENT

This endorsement modifies coverage provided under the following:

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

It is understood and agreed that:

1.  Section III., Definitions, is amended to add the following definition:

    **Class Certification Event Study Costs** means that portion of **Defense Costs** constituting reasonable costs, charges, fees and expenses of an expert witness incurred by an **Insured** to conduct an admissible event study regarding issues of fact relevant to class certification in a **Securities Claim** subsequent to the denial of a motion to dismiss in such **Securities Claim**.

2.  In the event that the retention applicable to a **Securities Claim** has not been exhausted, any remaining retention applicable to such **Securities Claim** shall not apply to **Class Certification Event Study Costs**.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 8 | ORPRO 12 102109 | Supernus Pharmaceuticals, Inc. | |

# OLD REPUBLIC INSURANCE COMPANY

**AMEND SECTION V.G.1**

This endorsement modifies coverage provided under the following:

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

It is understood and agreed Section V.G.1. is amended to read as follows:

G. **Transactions Changing Coverage**

1. Acquisition or Creation of Another Organization

If, during the **Policy Period**, the **Company**:

1. acquires voting securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or
2. acquires any organization by merger into or consolidation with the **Company**;

then, subject to all terms and conditions of this **Policy**, such organization and its **Insureds** shall be covered under this **Policy** but only with respect to covered **Wrongful Acts** taking place after such acquisition or creation unless the Insurer agrees to provide coverage by endorsement for **Wrongful Acts** taking place prior to such acquisition or creation.

If the assets of such acquired organization exceed thirty percent (30%) of the total assets of the **Parent Company** as reflected in the **Parent Company's** then most recent consolidated financial statements, the **Parent Company**, as a condition precedent to coverage with respect to such **Insureds**, shall give written notice of such acquisition to the Insurer within ninety (90) days after the effective date of such acquisition and shall agree to any additional terms and conditions, and pay any reasonable additional premium, required by the Insurer.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 9 | ORPRO 12 102109 | Supernus Pharmaceuticals, Inc. | |

# OLD REPUBLIC INSURANCE COMPANY

**AMEND SECTION IV. A. 5**

This endorsement modifies coverage provided under the following:

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

It is understood and agreed Section IV. Exclusions, Clause A. 5. is amended to read as follows:

**A.**The Insurer shall not be liable for **Loss** on account of that portion of any **Claim** made against any **Insured:**

5.based upon, arising out of, or attributable to:

a.any deliberately fraudulent act or omission or any willful violation of law by such **Insured**; or

b.such **Insured** gaining any personal financial profit or financial advantage or receiving financial remuneration to which such **Insured** was not legally entitled;

if a final and non-appealable adjudication in the underlying proceeding establishes such **Insured** committed such fraudulent conduct or willful violation of law or received such profit, advantage or remuneration, but this exclusion shall not apply, with respect to subparagraph 5. b. above, to any actual or alleged violation of Section 11, 12 or 15 of the Securities Act of 1933, as amended;

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 10 | ORPRO 12 102109 | Supernus Pharmaceuticals, Inc. | |

Manuscript (08/2015)                                                                                      Page 1 of 1

# OLD REPUBLIC INSURANCE COMPANY

### AMEND DEFINITION OF EXECUTIVE OFFICERS

This endorsement modifies coverage provided under the following:

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

It is understood and agreed that the definition of **Executive Officers** in Section III. K. is amended to read in its entirety as follows:

K. **Executive Officers** means with respect to the **Parent Company** any natural person who served, now serves or shall serve in any of the following positions with the **Parent Company** or any equivalent position:

-Chief Executive Officer

-Chief Financial Officer

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 11 | ORPRO 12 102109 | Supernus Pharmaceuticals, Inc. | |

# OLD REPUBLIC INSURANCE COMPANY

### AMEND SECTION V.J. PAYMENT PRIORITY

This endorsement modifies coverage provided under the following:

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

It is understood and agreed that Section V.J., last paragraph, is amended to read as follows:

Subject to the foregoing paragraph, the Insurer shall, upon receipt of a written request by the majority of the board of directors, delay any payment of covered **Loss** otherwise due and owing under Insuring Clause B. and/or Insuring Clause C. until such time as the majority of the board of directors designates, provided the Insurer's liability with respect to any such delayed**Loss** payment shall not be increased, and shall not include any interest, on account of such delay.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 12 | ORPRO 12 102109 | Supernus Pharmaceuticals, Inc. | |

Manuscript (08/2015)                                                                                   Page 1 of 1

# OLD REPUBLIC INSURANCE COMPANY

**BUMP-UP EXCLUSION AMENDMENT**

This endorsement modifies coverage provided under the following:

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

It is understood and agreed that subpart (5) in the second paragraph of the definition of **Loss** in Section III. T. shall not apply to an amount covered under Insuring Clause A. for which the **Company** is (i) neither permitted nor required by law to indemnify, or (ii) is unable to indemnify due to its **Financial Impairment.**

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 13 | ORPRO 12 102109 | Supernus Pharmaceuticals, Inc. | |

Manuscript (08/2015)

Page 1 of 1

# OLD REPUBLIC INSURANCE COMPANY

### BOOKS AND RECORDS DEMAND ENDORSEMENT

This endorsement modifies coverage provided under the following:

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

It is agreed that, subject to this **Policy's** other terms and conditions, coverage is afforded under this **Policy** for **Books and Records Demands** (as defined below) only pursuant to the following:

1. The Insurer shall pay on behalf of the **Company Books and Records Costs** for which the **Company** becomes legally obligated to pay in response to a **Books and Records Demand** first received by the **Company** during the **Policy Period.**

2. For the purposes of this Endorsement:

a. **Books and Records Costs** means reasonable costs, charges, fees and expenses (other than regular or overtime wages, salaries, fees or benefits of the directors, officers or employees of the **Company**) incurred by the **Company** in investigating, defending or appealing a **Books and Records Demand,** other than the costs, charges, fees and expenses to comply with, assemble, produce or make available documents or information in response to a **Books and Records Demand.**

b. **Books and Records Demand** means a written demand by or on behalf of any shareholder of the **Company** to inspect the books and records of such **Company** pursuant to Section 220 of the Delaware General Corporation Law or any similar statute in any other jurisdiction.

3. The Insurer's maximum aggregate liability for all **Books and Records Costs** and all **Derivative Investigation Costs** covered under this **Policy,** combined, shall be the Sublimit of Liability set forth in Item 3. (b) i. of the Declarations, which amount shall be part of, and not in addition to, the Aggregate Limit of Liability set forth in Item 3. (a) of the Declarations.  No Retention shall apply to **Books and Records Costs.**

4. For purposes of coverage under this Endorsement only:

a. all references in this **Policy** to **"Loss"** or **"Defense Costs"** shall only mean **Books and Records Costs;** and

b. all references in this **Policy** to **"Claim"** or to "**Claim** against any **Insured Person**" shall only mean any **Books and Records Demand.**

### ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 14 | ORPRO 12 102109 | Supernus Pharmaceuticals, Inc. | |

Manuscript (08/2015)                                                                                                      Page 1 of 1

# OLD REPUBLIC INSURANCE COMPANY

**AMEND SECTION III. CC**

This endorsement modifies coverage provided under the following:

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

It is understood and agreed that the definition of **Securities Claims** in Section III.CC, as may be otherwise amended in this **Policy**, shall also include the following:

**Securities Claims** shall also include a **Claim** against a **Company** in connection with a **Company's** actual, proposed or attempted acquisition of an entity which as a result of such acquisition did or would become a **Subsidiary**, if and to the extent such **Claim**:

1.is brought by one or more securities holders of such entity in this capacity as such, either directly or derivatively on behalf of such entity; and

2.asserts that the **Company** is liable for aiding and abetting a violation of any federal, state or foreign securities laws or any common law dutes, including any common law fiduciary duties;

provided the coverage afforded pursuant to this Endorsement shall only apply to **Defense Costs** incurred by the **Company** by reason of such **Claim**.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 15 | ORPRO 12 102109 | Supernus Pharmaceuticals, Inc. | |

Manuscript (08/2015)                                                                                             Page 1 of 1

# OLD REPUBLIC INSURANCE COMPANY

**AMEND SECTION V. B. (FIFTH PARAGRAPH)**

This endorsement modifies coverage provided under the following:

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

It is understood and agreed that Section V. B., fifth paragraph, is amended to read as follows:

Except as otherwise provided in this Section V. B., the Insurer's liability with respect to **Loss** arising from each **Claim** shall apply only to that part of **Loss** which is excess of the applicable Retention amount set forth in Item 4. of the Declarations. If different parts of a single **Claim** are subject to different Retentions, the applicable Retentions will be applied separately to each part of such **Loss,** but the sum of such Retentions shall not exceed the largest applicable Retention. The applicable Retention shall be eroded by either the **Insureds** or an insurer of an Excess Difference in Conditions Side A policy paying **Loss** otherwise subject to such Retention.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

This endorsement is a part of the Policy and takes effect at the inception of the Policy, unless another effective date is shown below.

| Endorsement No. | Policy No. | Issued To | Effective Date Of This Endorsement |
|---|---|---|---|
| 16 | ORPRO 12 102109 | Supernus Pharmaceuticals, Inc. | |

Manuscript (08/2015)                                                                                     Page 1 of 1

# OLD REPUBLIC INSURANCE COMPANY

INSURANCE IS PROVIDED BY
THE COMPANY DESIGNATED ON THE DECLARATIONS PAGE

**IN WITNESS WHEREOF,** we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

**OLD REPUBLIC INSURANCE COMPANY**
631 Excel Drive
Mt. Pleasant, Pennsylvania 15666

A Stock Company

This Policy is Non-participating With Regard to Paying Dividends to Policyholders

*Secretary*

*President*

# OLD REPUBLIC INSURANCE COMPANY

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism, *as defined in Section 102(1) of the Act*:  The term "act of terrorism" means any act that is certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security, and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW.  HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS.  UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85 % through 2015; 84 % beginning on January 1, 2016; 83 % beginning on January 1, 2017; 82 % beginning on January 1, 2018; 81 % beginning on January 1, 2019 and 80 % beginning on January 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE.  THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLON CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION.  IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $0 and does not include any charges for the portion of losses covered by the United States government under the Act.

Old Republic Insurance Company
Name of Insurer

Supernus Pharmaceuticals, Inc.
Name of Applicant

06/02/2022
Date

OLD REPUBLIC INSURANCE GROUP