**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

SUPERNUS PHARMACEUTICALS,
INC.,

    *Plaintiff,*

    v.

OLD REPUBLIC INSURANCE
COMPANY,

    *Defendant.*

Case No. 24-cv-3733-ABA

**MEMORANDUM OPINION**

Plaintiff Supernus Pharmaceuticals, Inc. ("Supernus") has been sued in Delaware

federal court for alleged violations of antitrust laws. Supernus has sued Defendant

Republic Insurance Company ("Old Republic") in this Court claiming that Old Republic

should indemnify it for the costs of the antitrust action pursuant to an insurance policy.

Because the language of the insurance policy does not cover the events that form the

basis for the antitrust lawsuit, the Court will grant Old Republic's motion to dismiss.

## I.    BACKGROUND[1]

Supernus is a pharmaceutical company with its principal place of business in

Rockville, Maryland. ECF No. 1 ¶ 1. In 2020 Supernus acquired the rights to distribute

Apokyn, a prescription medication used to treat mobility problems in people with

advanced Parkinson's disease. *Id.* ¶ 6. It acquired those rights through its acquisition of

USWM Enterprises, LLC ("Enterprises") and certain affiliated companies. *Id.* ¶ 9. As

explained below, in 2022 Supernus was sued by Sage Chemical, Inc. ("Sage") and

---

[1] Because this case is at the pleading stage, the Court will assume the allegations stated
in the complaint to be true and draw any reasonable inferences in Supernus's favor.

TruPharma, LLC ("TruPharma"), which have sought approval to market a generic version of Apokyn. *Id*. ¶¶ 13–14. Sage and TruPharma allege that Supernus's acquisition of Enterprises, and specifically the rights related to distribute Apokyn, violated antitrust and other laws. *Id*. ¶¶ 15–22. The case in this Court pertains to whether Supernus is entitled to coverage under a Directors and Officers insurance policy that Old Republic issued to Supernus in June 2022, and which covers the period May 31, 2022 to May 31, 2023 (the "Policy"). ECF No. 1 ¶ 25.

### A.    The insurance policy

Supernus has attached the Policy to its complaint, ECF No. 1-1, so the Court may consider it for purposes of the motion to dismiss. *See Medispec, Ltd. v. Chouinard*, 133 F. Supp. 3d 771, 772 n.1 (D. Md. 2015) ("In reviewing a motion to dismiss, courts may consider documents referenced or relied upon in the complaint.").

Through the Policy, Old Republic agreed to indemnify Supernus for certain types of monetary losses. Supernus relies here specifically on "Insuring Clause C," which insures against "Company Securities Liability." ECF No. 1-1 at 6.[2] Insuring Clause C states that Old Republic "shall pay on behalf of the Company Loss which the Company becomes legally obligated to pay by reason of any Securities Claim first made against the Company during the Policy Period or any applicable Extended Reporting Period for any Wrongful Acts." *Id*. The Policy defines "Company" to be Supernus and its "Subsidiaries." *Id*. at 8. And "Subsidiaries" is defined as (1) "any organization in which" Supernus (or one of its other subsidiaries) owns "more than [50%] of the outstanding voting

---

[2] Citations to page numbers refer to CM/ECF pagination for this and the other filings referenced herein, which may not align with a document's original page numbering.

securities representing the present right to vote" for directors or managers; (2) "any organization in which one or more Companies, in any combination[,]" have the right to elect a majority of directors or managers; or (3) charitable foundations or trusts controlled by a Company. *Id.* at 11–12. So, to summarize, Insuring Clause C provides coverage for "Securities Claims" based on alleged "Wrongful Acts" by Supernus or the entities it controls. ECF No. 1 ¶¶ 27–29; ECF No. 1-1 at 6, 10.

Both "Securities Claims" and "Wrongful Acts" are also defined terms. The Policy defines "Securities Claim" in relevant part as follows; the language Supernus relies on is bolded:

> Securities Claim means **any Claim**, other than an administrative, regulatory or investigative proceeding against or investigation of the Company or any employment-related Claim, **which in whole or in part is**:
>
> > 1. brought by one or more securities holders of the Company in their capacity as such, either directly or derivatively on behalf of the Company, or
> >
> > 2. **based upon, arising out of or attributable to the purchase or sale of, or offer to purchase or sell, any securities issued by the Company**, whether such purchase, sale or offer involves a transaction with the Company or occurs in the open market (including without limitation any such Claim brought by the Securities and Exchange Commission or any other claimant).

ECF No. 1-1 at 11 (emphases added).

The parties also agreed in an amendment, Endorsement 15, to expand the definition of Securities Claim to include coverage for defense costs related to the following:

> Securities Claims shall also include a Claim against a Company in connection with a Company's actual, proposed or attempted acquisition of an entity which as a result of such acquisition did or would become a Subsidiary, if and to the extent such Claim:
>
>> 1. is brought by one or more securities holders of such entity in this capacity as such, either directly or derivatively on behalf of such entity; and
>>
>> 2. asserts that the Company is liable for aiding and abetting a violation of any federal, state or foreign securities laws or any common law dutes, including any common law fiduciary duties.

*Id.* at 36. Supernus does not contend that Endorsement 15 provides coverage here. Endorsement 15 would only apply to claims brought by a "securities holder" of Supernus or a Subsidiary "in this capacity as such," *id.*; the companies that have sued Supernus in Delaware are not securities holders of Supernus. Supernus only contends that the Underlying Action triggered the "Securities Claim" coverage under the main Policy (specifically, as noted above, its coverage for claims "based upon, arising out of or attributable to the purchase or sale of, or offer to purchase or sell, any securities issued by the Company"), not Endorsement 15. *See* ECF No. 1 ¶ 35.

As stated above, one additional requirement for coverage (including for Securities Claims) is that the claim is for "Wrongful Acts." ECF No. 1-1 at 6. Wrongful Acts are defined as follows:

> 1. any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by any of the Insured Persons in their capacity as such, or in an Outside Position or, with respect to Insuring Clause C., by the Company, or

4

2. any matter claimed against the Insured Persons by reason
of their status as such or their serving in such capacity or in
an Outside Position.

*Id.* at 12.

### B.      The Underlying Action

In April 2020, Supernus acquired all shares of Enterprises and certain related companies. ECF No. 1 ¶ 9. Through this transaction, Supernus gained all rights to distribute Apokyn, which as noted above is a prescription medication for Parkinson's disease. *Id.* ¶¶ 6, 9. A few years after the sale, in October 2022, two pharmaceutical companies sued Supernus, Enterprises, and several other defendants in the District of Delaware for antitrust claims related in part to Supernus's acquisition of Enterprises (the "Underlying Action"). *Id.* ¶ 13; *Sage Chemical, Inc. et al v. Supernus Pharmaceuticals, Inc. et al.*, Case No. 22-cv-1302-CJB (D. Del.). Plaintiffs in the Underlying Action allege that Supernus and its co-defendants timed the acquisition of Enterprises to inflate Apokyn's price, among other allegations of anti-competitive behavior. ECF No. 1 ¶¶ 21–24; *see also* ECF No. 22-7 (Second Amended Complaint in the Underlying Action).[3]

---

[3] Old Republic moved for the Court to take judicial notice of the Second Amended Complaint in the Underlying Action, as well as four other documents (the Complaint and Amended Complaint in the Underlying Action and two SEC filings). ECF No. 23. Supernus opposed this motion, arguing that there was "no legitimate basis for this Court to take judicial notice of these documents, as Supernus' allegations can be evaluated for sufficiency without reference to any of those extrinsic pieces of evidence." ECF No. 32 at 4. But as Supernus itself acknowledged in its opposition, the Court may rely upon "documents explicitly incorporated into the complaint by reference, and documents integral to the complaint where there is no dispute as to the documents' authenticity." *Id.* at 3 (quoting *Reed v. Ironshore Specialty Ins. Co.*, Case No. 23-cv-651-DKC, 2023 WL 7487178, at *3 (D. Md. 2023)). The Underlying Action forms the basis for

Supernus timely notified Old Republic of the Underlying Action and submitted a claim for coverage in February 2023. ECF No. 1 ¶ 36. Supernus contends that it is entitled to coverage under Insuring Clause C because the "Underlying Action claims against Supernus arise out of Supernus' purchase of Enterprises['] securities" and therefore "Supernus has incurred Loss which it has become legally obligated to pay by reason of a Securities Claim against it first made during the Policy Period for the alleged Wrongful Acts." *Id.* ¶ 35. Old Republic denied coverage, stating that the Underlying Action "is not a Securities Claim." *Id.* ¶ 38.

Supernus then sued in this Court, asserting three counts: (1) declaratory judgment that Old Republic improperly denied Supernus's claim; (2) breach of contract; and (3) breach of the implied covenant of good faith and fair dealing. *Id.* ¶¶ 40–56. Old Republic moved to dismiss the complaint, arguing that the Underlying Action is not a Securities Claim. ECF No. 22. As noted above, Old Republic also moved for judicial notice of the pleadings in the Underlying Action and two SEC filings. ECF No. 23. Both motions are fully briefed, and the Court heard argument on February 12, 2026.

---

Supernus's insurance claim, so it is integral to its complaint, and Supernus has not disputed the documents' authenticity. Furthermore, the pleadings in the Underlying Action are public records. *United States ex rel. Rosales v. Amedisys N. Carolina, L.L.C.*, 128 F.4th 548, 554 (4th Cir.), *cert. denied*, 146 S. Ct. 103 (2025) (explaining that a court may take judicial notice of "public records like complaints"). Accordingly, the Court will take judicial notice of the filings in the Underlying Action. The Court need not and does not decide whether to take judicial notice of the SEC filings, as they are not necessary to the analysis herein; Old Republic is entitled to dismissal without the Court considering the SEC filings.

## II.   LEGAL STANDARD

When a defendant asserts that, even assuming the truth of the alleged facts, a complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and state a facially plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering such a motion, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Because this is a diversity jurisdiction case, the Court applies Maryland's choice-of-law rules. *See Navigators Ins. Co. v. Under Armour, Inc.*, 165 F.4th 171, 182 n.10 (4th Cir. 2026). "For insurance disputes, Maryland courts apply the law of the state where the insurance contract was made." *Id.* The contract here was made in Maryland, ECF No. 1 ¶ 4, so the Court will apply Maryland substantive law to interpret the Policy.

## III.   DISCUSSION

Supernus's claim for coverage under the Policy is based on the contention that the Underlying Action is a "Securities Claim."[4] Old Republic contends that even

---

[4] Old Republic does not owe what is generally referred to as a duty to defend because under the Policy "it shall be the duty of the Insureds and not the duty of the Insurer to defend any Claim." ECF No. 1-1 at 15. Accordingly, contrary to Supernus's claims in its opposition, ECF No. 29 at 28–29, the question here is not whether there is a

accepting Supernus's factual allegations as true, the Underlying Action is not a "Securities Claim" and thus Old Republic is entitled to dismissal of the complaint.

Maryland courts "interpret the language of an insurance policy with the same principles and rules of construction [used] to interpret other contracts." *Connors v. Gov't Emps. Ins. Co.*, 442 Md. 466, 480 (2015). Thus "courts construe language in an insurance policy based on the meaning that a reasonable person in the shoes of the parties would attribute to it." *Navigators Ins.*, 165 F.4th at 182. "When contractual language is plain and unambiguous, [courts] enforce the terms of the contract as a matter of law." *Connors*, 442 Md. at 480. And contracts are ordinarily to be interpreted to "avoid" rending any provisions "superfluous.'" *Nautilus Ins. Co. v. 200 W. Cherry St., LLC*, 383 F. Supp. 3d 494, 510 (D. Md. 2019) (quoting *Calomiris v. Woods*, 353 Md. 425, 442 (1999)). "[I]n the event that an insurance policy contains ambiguous language, [courts] construe that language 'liberally in favor of the insured and against the insurer[.]'" *Connors*, 442 Md. at 481–83) (quoting *Megonnell v. United Services Auto. Ass'n*, 368 Md. 633, 655 (2002)). "A policy term is considered 'ambiguous if, to a reasonably prudent person, the term is susceptible to more than one meaning.'" *Id.* at 483 (quoting *Cole v. State Farm Mut. Ins. Co.,* 359 Md. 298, 305–06 (2000)).

Applying these standards, the Underlying Action does not trigger Securities Claim coverage. Supernus claims that the Underlying Action falls within the component

---

"*potentiality* that the claim could be covered by the policy," *Montgomery Cnty. Bd. of Educ. v. Horace Mann Ins. Co.*, 383 Md. 527, 537 (2004) (quotation omitted), but rather whether the Policy in fact provides coverage to Supernus for the claims asserted in the Underlying Action—though for the reasons explained below, even if the "potentiality" standard applied, Supernus has not shown that there is any "potentiality" of coverage under the Policy.

of the definition of Securities Claim for claims "based upon, arising out of or attributable to the purchase or sale of, or offer to purchase or sell, any securities *issued by the Company.*" ECF No. 1-1 at 11 (emphasis added). "Company" is defined as "the Parent Company [i.e., Supernus] and the Subsidiaries." *Id.* at 8. And "Subsidiaries," as explained above, essentially includes entities "present[ly]" owned or controlled by Supernus. *Id.* at 11 (definition of "Subsidiary"). Thus, to establish that the Underlying Action constitutes a "Securities Claim," the Underlying Action must assert claims arising out of a purchase or sale (or offer to buy or sell) securities issued either (a) by Supernus itself, or (b) by a company that is/was a subsidiary of Supernus when it issued securities out of which the claims arose.

The insurance claim here does not meet this requirement. The claims asserted in the Underlying Action arose from Supernus's acquisition of Enterprises. The fundamental reason those claims are not "Securities Claims" is that the acquisition did not involve "securities issued by the Company." Supernus acquired Enterprises through a cash purchase.[5] To the extent there were any securities issued in connection with the acquisition, they were issued by Enterprises prior to its acquisition by Supernus, not by Supernus or by Enterprises at a time that it was a subsidiary of Supernus. The Policy provisions at issue are plain and unambiguous: because the claims in the Underlying Action do not arise from securities issued by the Company, Supernus is not entitled to Securities Claim coverage. *See Connors*, 442 Md. at 480 ("When contractual language is

---

[5] The fact that Supernus's acquisition of Enterprises was a cash purchase does not appear in Supernus's complaint, but was an allegation in the Underlying Action. *See* ECF No. 22-7 ¶ 155. Supernus has never alleged or contended that its purchase of Enterprises involved the issuance of Supernus stock, and counsel for Supernus did not dispute this point when questioned about it at the hearing.

plain and unambiguous, we enforce the terms of the contract as a matter of law."); *Nat'l Union Fire Ins. Co. of Pittsburgh v. David A. Bramble, Inc.*, 388 Md. 195, 208 (2005) ("[I]f no ambiguity in the terms of the insurance contract exists, a court will enforce those terms.").

Supernus's primary counterargument is that Enterprises was a subsidiary of Supernus by the time the insurance claim was made, so it should be considered a subsidiary of Supernus for purposes of evaluating whether the Policy is triggered. ECF No. 29 at 17. But this interpretation conflicts with the plain meaning of the Policy as outlined above. The claims by Sage and TruPharma do not arise out of any acquisition of securities issued by Supernus—or by Enterprises *while it was a subsidiary of Supernus*. Thus, even if Enterprises issued securities in order to effectuate its acquisition by Supernus, and even though Sage and TruPharma's claims arise at least in part from the acquisition, accepting all of Supernus's allegations as true there is no reasonable way to conceive of Sage and TruPharma's claims as arising out of securities "issued by the Company." Enterprises did later become a subsidiary of Supernus, and was a subsidiary at the time Supernus *sought coverage* from Old Republic. But Enterprise's status as a subsidiary of Supernus at the time Supernus sought coverage is not relevant to determining whether Securities Claim coverage is available. The relevant question is whether Enterprises was a subsidiary of Supernus when it issued securities. Undisputedly, it was not, and thus under the plain language of the Policy, the claims asserted in the Underlying Action do not give rise to a duty to indemnify.

In addition to the plain language of the Policy described above, this conclusion is confirmed by other portions of the Policy, in two ways.

First, the Policy explicitly differentiates between pre-acquisition targets and post-acquisition subsidiaries in multiple provisions, and disclaims coverage for claims arising from conduct by pre-acquisition targets before they are acquired. Take § V.G as an example. That provision, as amended by Endorsement 9, states that if "the Company . . . acquires voting securities or voting rights in another organization" that then "becomes a Subsidiary," "such organization and its Insureds shall be covered under this Policy." ECF No. 1-1 at 30. But, crucially, it makes clear that such coverage is "only with respect to covered Wrongful Acts taking place **after** such acquisition or creation" (unless Old Republic expressly "agrees to provide coverage by endorsement for Wrongful Acts taking place prior to such acquisition or creation," which Supernus does not contend occurred here). ECF No. 1-1 at 30 (emphasis added). Sage and TruPharma's claims are based, in relevant part, on the acquisition of Enterprises itself—not Wrongful Acts related to the issuance of securities that took place *after* acquisition. Supernus's proposed interpretation, that Securities Claims can include stock issuance by pre-acquisition entities, would contradict the distinction established in this provision. Similarly, § IV.A.4 states that Old Republic is not liable "for Wrongful Acts actually or allegedly committed or attempted by a Subsidiary or its Insured Persons before the date such Subsidiary became an Insured." *Id.* at 12. Again, this provision is inconsistent with Supernus's interpretation that a subsidiary is covered for acts that took place before it became a subsidiary.

Second, Supernus's interpretation would render Endorsement 15 superfluous. Endorsement 15 expanded Securities Claim coverage to include defense costs related to "a Claim . . . in connection with a Company's actual, proposed or attempted acquisition of an entity which as a result of such acquisition did or would become a Subsidiary" if

the claim "is brought by one or more securities holders of such entity in this capacity as such, either directly or derivatively on behalf of such entity." ECF No. 1-1 at 36. Endorsement 15 does not apply here—as Supernus concedes—because the Underlying Action is not a direct or derivative shareholder suit. But the existence of Endorsement 15 supports Old Republic's argument. If Securities Claims coverage generally applied to stock issued by a pre-acquisition target, as Supernus argues, Endorsement 15 would be unnecessary: there would be no need to extend coverage to include shareholder suits related to "acquisition of an entity which as a result of such acquisition did or would become a Subsidiary." Such claims would already be covered by the existing coverage for Securities Claims. The parties' decision to amend the Policy in Endorsement 15 is evidence against Supernus's proposed reading. *See Bramble*, 388 Md. at 209 (2005) (Maryland courts have "adhered to the principle that [they] will not unnecessarily read contractual provisions as meaningless"); *Nautilus Ins.*, 383 F. Supp. 3d at 510 ("Maryland courts 'will ordinarily avoid interpreting contracts in a way that renders [their] provisions superfluous.'") (quoting *Calomiris*, 353 Md. at 442).

Supernus cites *Bernstein v. Genesis Insurance Co.*, 90 F. Supp. 2d 932 (N.D. Ill. 2000), for the proposition that Enterprises's stock issuance should be covered because it was a subsidiary by the time the insurance claim was made. ECF No. 29 at 24. But the issue in *Bernstein* was whether an "insured versus insured" exclusion could bar insurance coverage for the underlying action there, a class action brought against Plaintiff by its former securities-holders. 90 F. Supp. 2d at 936–37. The court held that it did not, because the class plaintiffs in the underlying action were no longer securities-holders when the insurance claim was made. *Id.* at 937. *Bernstein* is distinguishable. The rationale behind the "insured versus insured" exclusion is to ensure that a company

12

cannot create "collusive suits" by, for example, having "a corporation sue[] its officers or directors in an effort to recoup the consequences of business mistakes." *Id.* (quoting *Level 3 Communications, Inc., v. Federal Insurance Co.,* 168 F.3d 956, 958 (7th Cir. 1999)). The considerations related to the "insured versus insured rule" are not at play here. *Bayside Fire Protection, LLC v. Everest Indem. Ins. Co.,* 592 F. Supp. 3d 454 (D. Md. 2022), another case Supernus cites, ECF No. 29 at 26, does not help Supernus either. That case merely explains that, in a "claims made" policy, the insured can seek coverage for any claims made during the policy period, regardless of when the liability-inducing event occurred. *Id.* at 466. But Old Republic has not argued that Supernus cannot make an insurance claim because the events occurred outside the policy period; it has argued that Supernus is simply not entitled to coverage under the plain language of the policy.

Supernus lodges several additional counterarguments, but none succeed. First, Supernus contends that the claim should be covered because under Maryland law, "arising out of" should be interpreted broadly to entail but-for causation, and the Underlying Action would not have occurred but for Enterprises' issuance of securities that were later acquired by Supernus. ECF No. 29 at 15–16. But even if the Court were to adopt Supernus's broad definition of "arising out of," the acquisition of Enterprises was *not* "the purchase or sale of, or offer to purchase or sell, any securities issued by the Company" because Enterprises was not yet a subsidiary at the time its shares were issued. Thus, the interpretation of "arising out of" is irrelevant. The event out of which the Underlying Action arose was a transaction involving a target acquisition's securities, not securities issued by Supernus (or by Enterprises at a time when it was a subsidiary of Supernus), so Supernus lacks coverage under the Securities Claim provision.

Next, Supernus argues that Old Republic waived its ability to deny coverage. Supernus contends that Old Republic failed to state its "specific defense" in its initial denial, ECF No. 29 at 25, namely that it was denying coverage because the Underlying Action was not connected to a sale of securities "issued by the Company." But Old Republic did state it was denying coverage because the Underlying Action "is not a Securities Claim, as that term is defined in the Policy." ECF No. 1 ¶ 38 (Supernus's complaint quoting from the denial letter). Moreover, even if Old Republic had failed to state as such, this would not create Securities Claim coverage for Supernus. "Under Maryland law, 'waiver or estoppel may occur only when it does not create new coverage.'" *Blissful Enters., Inc. v. Cincinnati Ins. Co.*, 421 F. Supp. 3d 193, 203 (D. Md. 2019), *aff'd*, Case No. 19-2217, 2022 WL 6671618 (4th Cir. Oct. 11, 2022) (quoting *Gordon v. Hartford Fire Ins. Co.*, 105 F. App'x 476, 484 (4th Cir. 2004)). "[I]f the loss was not within the coverage of the policy contract, it cannot be brought within that coverage by invoking the principle of waiver or estoppel." *Id.* (quoting *Md. Auto. Ins. Fund v. John*, 198 Md. App. 202, 216 (2011)). Old Republic's purported waiver in a denial letter cannot give rise to coverage for Supernus's purchase of a target company's shares when the Policy does not extend such coverage.

Supernus also notes that the fact that the Underlying Action is an antitrust claim, rather than a claim for violation of securities laws, should not bar coverage. Supernus cites *Bernstein* and another case, *Valeant Pharmaceuticals International, Inc. v. AIG Insurance Co. of Canada*, 625 F. Supp. 3d 309, 342 (D. N.J. 2022), to support this view, contending that "[c]ourts interpreting materially identical definitions of 'Securities Claim' have consistently confirmed that coverage does not require an express allegation of a securities law violation." ECF No. 29 at 29. But Old Republic's argument is *not* that

coverage should be denied because the Underlying Action is an antitrust case rather than a securities case. Instead, Old Republic has denied coverage because the Underlying Action did not arise out of the issuance of securities by Supernus or its subsidiaries. The Underlying Action does not trigger coverage because it did not arise from the issuance of securities by Supernus or its subsidiaries, irrespective of whether the claims are based in antitrust or securities law.

For these reasons, even accepting the factual allegations in Supernus's complaint as true, it has not pled a cognizable basis on which the Court could conclude that the claims asserted by Sage and TruPharma are "Securities Claims" within the meaning of the Policy. Accordingly, Supernus has not stated claims for a declaratory judgment (Count 1) or breach of contract (Count 2) on which relief can be granted, and thus those claims will be dismissed. Count 3 alleges that by denying Supernus's claim for coverage, Old Republic has breached the implied covenant of good faith and fair dealing, which Supernus has subsequently clarified is "a contract-based claim for breach of the implied covenant of good faith and fair dealing, premised on Old Republic's unreasonable denial of coverage under the Policy." ECF No. 29 at 22. Because the denial was warranted, Count 3 also does not state a claim on which relief can be granted. And finally, because Supernus also has not identified any additional or different facts that it could allege in an amended complaint that would change that analysis, the dismissal of each of the counts will be with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, most fundamentally because the claims asserted by Sage and TruPharma are not "Securities Claims" within the meaning of the Old Republic Policy, the Court will grant Old Republic's motion to dismiss and close the case in the accompanying order.


Date:  March 24, 2026                                    _____/s/_____
                                                        Adam B. Abelson
                                                        United States District Judge